UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DIANA BROWN, | ) | Civil Action No.: 4:14-cv-0307-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| MEGAN J. BRENNAN, Postmaster | ) | |
| General, United States Postal Service; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

This is an employment case.  Plaintiff brings this action pursuant to Title VII of the Civil

Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., alleging discrimination based on race

and retaliation.  Presently before the court is Defendant's Motion for Summary Judgment (Document

# 25).  All pretrial proceedings in this case were referred to the undersigned pursuant to the

provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  This report

and recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff, an African-American female, began working for the United States Postal Service

(USPS) in Marion, South Carolina, on August 20, 2000, as a Rural Carrier Associate (RCA), which

is a non-career, part-time position.  Pl. Dep. 15-16, 19 (Ex. 1 to Def. Motion).  In 2006, she

transferred to the Latta Post Office and later that year to the South Florence Post Office.  Pl, Dep. 21-

23.  In 2008, Plaintiff's supervisor, Clark Ord, told her that her hours would be substantially reduced

and there may be some weeks when she would have no work at all.  Ord suggested that she apply for

partial unemployment benefits at the South Carolina Employment Security Commission (SCESC).

Brown Pre-hearing Report (Ex. 2 to Def. Motion).  From October of 2008 through October of 2009,

during the period that her hours were reduced, Plaintiff applied for and received partial unemployment benefits through SCESC.  Id.

On June 22, 2010, the USPS Office of Inspector General (OIG) received information from Ryan Sneed, Supervisor, Employment and Workforce, SCESC, regarding Plaintiff and other postal employees.  USPS OIC Report of Investigation (Ex. 5 to Def. Motion).  Sneed reported that, between October of 2008 and October of 2009, Plaintiff had filed fraudulent unemployment claims in that she under-reported her income when filing for partial unemployment benefits.  Id. As an RCA employee, Plaintiff was entitled to work and apply for partial unemployment benefits during their slow period. Id.  Plaintiff was responsible for accurately reporting her earnings to the SCESC at the end of each week.  Id.

After receiving this information from Sneed, the OIG conducted its own investigation.  Id. Between July 2010 and November 2010, Special Agent (SA) Stanley Johnson gathered information and conducted a spreadsheet comparison of Plaintiff's weekly reports to the SCESC and her USPS payroll records.  Id.  The comparison revealed that Plaintiff under-reported her income on several occasions, resulting in overpayments totaling $7,381.00.  Id.

Meanwhile, in the fall of 2010, during the OIG investigation, Plaintiff filed a grievance through the union, alleging that she had be improperly bypassed for a full time Rural Carrier position and raising the issue of "whether or not management failed to timely post Rural Route 13 and, if so, what shall be the remedy?"  Pl. Dep. 27, 29, 30; Step 2 Grievance Settlement (Ex. 3 to Def. Motion). Plaintiff's grievance was resolved at step 2 on January 6, 2011, and Plaintiff was offered a full-time position at the Main Post Office on West Evans Street in Florence with pay retroactive to November 20, 2010.  Id.

Plaintiff's first supervisor at the Main Post Office was Pam Jefferson, a white female, and

later, Louise Kinney, an African-American female.  Pl. Dep. 33-34.  Rando Strickland, II, a white

male, was Postmaster in Florence in 2011 and, as such, he was her second line supervisor.

On January 27, 2011, SA Johnson along with SA Edison D. Gunter, of the OIG for the U.S.

Department of Labor, interviewed Plaintiff.  Id.; USPS OIG Memorandum of Interview (Ex. 5 to

Def. Motion).  Neither Kinney nor Strickland were aware of the investigation regarding the

overpayments until SA Johnson and SA Gunter visited the Florence post office to interview Plaintiff.

Kinney Decl. ¶ 3; Strickland Decl. ¶ 5.  During the interview, Plaintiff conceded that she under-

reported her income to the SCESC.  USPS OIG Memorandum of Interview. She stated that she

calculated her earnings in half[1] when she reported them to the SCESC, and that she did not fully

understand the process.  Id.  She offered to repay any funds deemed an overpayment by the SCESC.

Id.  Following the interview, Plaintiff visited the SCESC to obtain details of the overpayment and

was given a signed, computer printout[2] showing that their records did not reflect any overpayment.[3]

EEOC Hearing Decision (Ex. A to Pl. Response).

The Inspector General released a report of SA Johnson's findings on February 10, 2011.

USPS OIC Report of Investigation (Ex. 5 to Def. Motion).  On February 12, 2011, Strickland placed

Plaintiff on Emergency Placement in Off-Duty Status.  Emergency Placement in Off-Duty Status

Memorandum (Ex. 6 to Def. Motion).  Later that same day, February 12, 2011, Plaintiff made official

---

[1]During her deposition, Plaintiff explained that she reported working half of the time she actually worked.  Pl. Dep. 48-49.  She explained that she reported only half of the time she worked in order to account for expense reimbursement she received for using her personal car to deliver the mail.  Pl. Dep. 58-59.

[2]This document is not in the record, although it appears to have been included in the record before the EEOC.

[3]Plaintiff asserts that she later received letters from the SCESC in May of 2011, informing her of the overpayments.  EEOC Hearing Decision.  These letters are also not in the record, but appear to have been provided to the EEOC.

contact with an EEOC Counselor.

On March 22, 2011, Plaintiff was indicted on one count of violation of 18 U.S.C. § 641. Pl. Indictment (Ex. 14 to Def. Motion). Plaintiff received a Notice of Removal, notifying her of her termination, on April 22, 2011. Notice of Removal (Ex. 7 to Def. Motion). Plaintiff's first-line supervisor, Kinney, made the recommendation for removal and Strickland concurred. Kinney Decl. (Ex. 1 to Def. Reply); Strickland Decl. (Ex. 2 to Def. Reply). Plaintiff grieved the removal through the union, which was denied at steps one, two and three. Kelly Decl. ¶ 10(a) (Ex. 4 to Def. Reply). At the final appeal, Plaintiff's grievance was withdrawn by the union. Id.; Pl. Dep. 97-98. After the union withdrew the grievance, Plaintiff's employment was officially terminated and she was removed from the rolls of the USPS on January 31, 2013. Notification of Personnel Action (Ex. 11 to Def. Motion).

Following her indictment, Plaintiff entered the pretrial diversion program and completed her requirements on July 30, 2013, including repayment of the monies due in full. Agreement for Pretrial Diversion (Ex. 12 to Def. Motion); Pre-Hearing Report. On September 9, 2013, the indictment was dismissed without prejudice. Order Dismissing Indictment (Ex. 14 to Def. Motion).

In addition to Plaintiff, other USPS employees were accused of under-reporting their income to the SCESC and at least four of them (three African-American and one white) were indicted and removed from their positions with the USPS. Newspaper Article (Ex. 15 to Def. Motion). The USPS issued a Notice of Removal to Corey C. Baker, an African-American male , on March 28, 2011. His removal was effective April 29, 2011. Court records show that he was indicted on March 22, 2011, he entered the Pretrial Diversion Program, and the charges against him were dismissed without prejudice on June 20, 2013. Baker Documents (Ex. 16 to Def. Motion).

The USPS issued a Notice of Removal to Carmen Robertson, a white male, on March 1,

2011. His removal was effective April 16, 2012. Court records show that he was indicted on March 22, 2011, that he successfully completed the Pretrial Diversion Program, and that the charges against him were dismissed without prejudice on April 22, 2013. Robertson Documents (Ex. 17 to Def. Motion).

The USPS issued a Notice of Removal to Tracy H. Timmons, an African-American female, on March 28, 2011. Her removal was effective April 29, 2011. Court records show that she was indicted on March 22, 2011, that she successfully completed the Pretrial Diversion Program, and that the charges against her were dismissed without prejudice on September 9, 2013. Timmons Documents (Ex. 18 to Def. Motion).

The USPS issued a Notice of Removal to Keisha Weaver, an African-American female, on March 11, 2011. Her removal was effective August 16, 2012. Court records show that she was indicted on March 22, 2011, entered a guilty plea on August 23, 2011, and was sentenced to five (5) years' probation. Weaver Documents (Ex. 19 to Def. Motion).

Plaintiff notes one white USPS employee, Angela Atkinson, who was also accused of under-reporting her income to the SCESC, but whose employment was not terminated. Atkinson worked at the Hartsville post office under a Postmaster other than Strickland. Pl. Dep. 72 (Ex. 3 to Def. Reply). She was interviewed by OIG Agent Rhonda Dolby and a Postal Inspector General in January 25, 2011, for under-reporting her income in 2009. Kelly Decl. ¶ 10(g) (Ex. 4 to Def. Reply). Atkinson was placed on Emergency Placement effective July 29, 2011, and issued a Notice of Removal on September 8, 2011. Id. No criminal charges were brought against Atkinson.[4] The union

---

[4]Plaintiff states in her response that "the U.S. attorney's office did not pursue charges against [Atkinson]," Pl. Resp. p. 8, and Defendants represent that "[a] search of the S.C. District Court PACER website for Angela Atkinson shows that, 'No information was found that matched the search criteria entered.'" Def. Reply p. 2, n. 3.

grieved Atkinson's removal, which was denied at steps one and two, but a settlement was reached at step three and Atkinson was able to retain her job.  Kelly Decl. ¶ 10(g).

Plaintiff also points to employees who improperly received an Equipment Maintenance Allowance (EMA), which is a reimbursement for personal car expenses, even though they were driving government trucks, asserting they engaged in conduct similar to hers.  Rebecca Jenson, a white female, Stella McClellan, an African-American female, and Linda Buckner, an African-American female, were also supervised by Kinney and Strickland.  Strickland Aff.  They were not placed on Emergency Placement, were allowed to repay the overpayments, and were not removed from employment.  Id.  Strickland explained that the improper payment of EMA to these employees resulted from a management oversight in failing to update records when a government truck was assigned to these employees and they no longer used their personal vehicles.  Id.

Plaintiff filed a formal Charge of Discrimination with the EEOC on May 15, 2012, alleging discrimination based upon race.  EEOC Complaint of Discrimination (Ex. 8 to Def. Motion).  The EEOC held a hearing on August 15, 2013.  By decision entered October 23, 2013, the EEOC Administrative Judge made a finding of no discrimination.  Hearing Decision.  Plaintiff filed the present action on February 5, 2014.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    Race Discrimination

Title VII makes it "an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, she may establish through direct or circumstantial proof that a protected characteristic such as race was a motivating factor in the employer's adverse decision. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir.2004) (en banc). When direct evidence is lacking, a plaintiff may proceed under the burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting scheme, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. To establish a prima facie case of race discrimination in a termination case, the plaintiff must present facts showing that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. White v. BFI Waste Services, LLC, 375 F.3d 288, 295 (4th Cir.2004). The fourth element can also be met by showing other circumstances giving rise to a reasonable inference of unlawful discrimination. Miles v. Dell, Inc., 429 F.3d 480, 486–87 (4th Cir.2005).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once Defendant has met its burden of production by producing its legitimate,

-8-

nondiscriminatory reason, the sole remaining issue is "discrimination vel non." <u>Reeves v. Sanderson</u>

<u>Plumbing Products, Inc.</u>, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing <u>Postal</u>

<u>Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). In

other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence

that the legitimate reason produced by Defendant is not its true reason, but was pretext for

discrimination. <u>Reeves</u>, 530 U.S. at 143. Throughout the burden shifting scheme set forth in

<u>McDonnell Douglas</u>, the ultimate burden of proving that Defendant intentionally discriminated

against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting

evidence from which a reasonable jury could conclude defendant intentionally discriminated against

her.

Plaintiff argues that the decision to terminate her employment as a result of her under-

reporting her income to the SCESC was based upon her race. It is undisputed that Plaintiff is a

member of a protected class and that she suffered adverse employment actions when she was placed

on Emergency Placement and later terminated. Defendant argues that her job performance was not

satisfactory because she under-reported her income to the SCESC. Plaintiff does not address this

element of her burden, except to argue that she did not wilfully intend to defraud the SCESC.

Nevertheless, she argues, other, similarly-situated white employees also received overpayments but

were not terminated.

To raise a successful similarly-situated argument, a "plaintiff must establish that other

employees were similarly situated in all relevant respects; that they dealt with the same supervisor,

[were] subject to the same standards and ... engaged in the same conduct without such mitigating

circumstances that would distinguish their conduct or the employer's treatment of them for it." <u>See</u>

<u>Ward v. City of North Myrtle Beach</u>, 457 F.Supp.2d 625, 643 (D.S.C.2006) (internal citations

omitted). Although Plaintiff need not establish exact similarity, see Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993), "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir.2008).

Plaintiff points to two white employees, Angela Atkinson and Rebecca Jenson, who she asserts received overpayments but were not terminated. Atkinson was investigated for under-reporting her income to the SCESC, however Plaintiff fails to present evidence of the nature and extent of Atkinson's conduct sufficient to show that they engaged in the same conduct without mitigating circumstances that would distinguish it. Thus, Atkinson is not similarly situated in that respect. In addition, Atkinson worked at a post office in Hartsville and was not supervised by the same individuals as Plaintiff. Thus, she is not similarly situated in that respect. Further, the U.S. Attorney's office did not bring criminal charges against Atkinson.[5] Thus, she is not similarly situated in that respect, either. As such, Atkinson is not a proper comparator.[6]

Plaintiff and Jenson did have the same supervisors. However, their conduct was not similar.

---

[5]Although Plaintiff appears to imply that the U.S. Attorney's decision to indict her and not Atkinson was based on racial lines, see Pl. Resp. p. 2, she presents no evidence that the indictments are imputable to her employer in any way.

[6]Nevertheless, the record reveals that the disciplinary process proceeded against Atkinson in the same manner in which it proceeded against Plaintiff. Atkinson was interviewed by OIG agents in January of 2011, was placed on Emergency Placement and received a Notice of Removal, as did Plaintiff. Atkinson's union grieved her removal, which was denied at steps one and two, as was Plaintiff's grievance. At step three, Atkinson's representatives were able to reach a settlement with the Area Labor Relations Specialist, Garfield Tavernier, who sits in Washington, D.C. Kelly Decl. ¶¶ 6, 9, 10(g). Plaintiff's grievance was denied at step three, and thereafter her union withdrew the grievance. (Again, Plaintiff appears to imply that the union's decisions withdraw her grievance but continue to represent Atkinson were racially based. Again, she presents no evidence to hold her employer responsible for these decisions.) Thus, the disciplinary processes of Plaintiff and Atkinson diverge only at the step three grievance level. While the reasoning for the decisions made at this level is not in the record, as stated above, Plaintiff fails to show that she and Atkinson engaged in the same conduct, and mitigating circumstances, namely, the lack of an indictment for criminal conduct, exist.

Plaintiff under-reported her income to the SCESC.  Jenson continued to receive reimbursement for use of her personal vehicle after she no longer used her own car.  Strickland, the Postmaster under which both Plaintiff and Jenson worked, explained that he felt the overpayments received by Jenson and the other two, African-American employees "[were] not due to the employees knowingly misleading the Postal Service but occurred due to a miscommunication between local management and the District Office updating paperwork."  Strickland Aff.  He stated that these employees were issued an indebtedness notice and were required to pay the money back, but he did not issue any corrective action "because unlike [Plaintiff], they did not intentionally defraud the organization or make any purposeful misrepresentations."  Strickland Decl.  ¶¶ 13-14.  Jenson took no action to receive her overpayments, while Plaintiff under-reported her income on a weekly basis in order to receive her overpayments.[7]  Thus, Plaintiff fails to present sufficient evidence to show that Jenson engaged in the same conduct without such mitigating circumstances that would distinguish her conduct from Plaintiff's or Strickland's treatment of them for it.  Accordingly, Jenson is not a proper comparator.

Plaintiff points to no other employees outside the protected class who engaged in the same or similar conduct yet were treated more favorably.  USPS employees, both African-American and white, were terminated for under-reporting their income to the SCESC.  Other USPS employees, both African-American and white, suffered no adverse consequences for receiving overpayments due to a managerial oversight.  Plaintiff fails to present any other evidence that could give rise to an

---

[7]The documents indicating Plaintiff's income during the relevant time period and the amount she was actually reporting to the SCESC are not in record.  However, in his Hearing Decision, the EEOC Administrative Judge stated "[i]n comparing these documents, it is clear that Complainant grossly underreported her income, weekly, for the entire time that she collected benefits."  EEOC Hearing Decision p. 3.

inference of discrimination. Therefore, she fails to present a prima facie case of race discrimination under Title VII. Accordingly, summary judgment is appropriate on this claim.

### B.    Retaliation

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000); see also 42 U.S.C. § 2000e-5(f)(1). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir.1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge' ") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec., 532 F.2d 359, 365 (4th Cir.1976)); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).[8]

---

[8]In Jones v. Calvert Group, Ltd., 551 F.3d 297, 303 (4th Cir.2009), the Fourth Circuit explained that a claim of retaliation for the filing of an EEOC charge does not require the filing of a new charge so

Plaintiff argues that Strickland retaliated against her for her successful union grievance, the result of which was to promote Plaintiff to a full time rural carrier. However, Plaintiff did not allege a retaliation claim in her EEOC charge of discrimination. Nevertheless, Plaintiff mentions this grievance her pre-hearing report, and the EEOC administrative law judge states in his hearing decision that "[a]lthough Complainant does not expressly state a claim of retaliation, the content of her allegations appear to raise such a claim." EEOC Hearing Decision p. 5; Pl. Pre-hearing Report p. 2. Thus, Plaintiff's retaliation claim can be said to have developed by reasonable investigation of the original complaint and, accordingly, has been exhausted.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a prima facie case, Defendant can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff must present evidence sufficient to create a genuine issue of material fact that Defendant's legitimate, non-retaliatory reason is pretextual. See Matvia v. Bald Head Island Management, 259 F.3d 261, 271 (4th Cir.2001).

As stated above, Plaintiff suffered adverse employment actions when she was placed on Emergency Placement and later terminated. However, Defendant argues that she did not engage in

---

long as the retaliation charge is "like or reasonably related to and growing out of such allegations." Id. at 302 (quoting Nealon v. Stone, 958 F.2d 584 (4th Cir.1992)). This holding is inapplicable here where Plaintiff alleges retaliation based upon a union grievance filed prior to her charge of discrimination with the EEOC.

protected activity by filing her union grievance.  To establish "protected activity," Plaintiff must show she opposed an employment practice made unlawful by Title VII which she reasonably believed had occurred or was occurring. <u>Bigge v. Albertsons, Inc.</u>, 894 F.2d 1497, 1503 (11th Cir.1990); <u>see</u> <u>also</u> <u>Ross</u>, 759 F.2d at 355 n. 1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of sexual harassment was in fact meritorious in order to prevail).  "[T]he 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair." <u>McNair v. Computer Data Sys., Inc.</u>, 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. Jan.26, 1999) (unpublished).

Plaintiff argues that she engaged in protected activity when she filed her union grievance in fall of 2010 regarding a position as a full-time rural carrier.  However, there is very little information in the record regarding this grievance, and no indication that she raised the issue of race.  The Step 2 Grievance Settlement states only that "[t]he issue in this grievance is whether or not management failed to timely post Rural Route 13 and, if so, what shall be the remedy."  Step 2 Grievance Settlement (Ex. 3 to Def. Motion).  In the portions of Plaintiff's deposition that were submitted to the court she makes no mention of race being the basis for her grievance through the union.  She testifies

> But when it was time for a job promotion to go up for me to be a rural carrier, I felt like I had been there ten years, if it was my time, you know, I wanted, you know, to be rewarded.  And I went through a union rep, and I was telling them about it.  And they said, well, it's your time to be full-time, so we're going to put in for a grievance, you know, for you to be full time.
>
> . . .
>
> Q.  You felt like you were being passed over?

A.  Yes.  And I heard that his reasons was it was the holidays, like Thanksgiving, November, and he needed me in different areas, and he didn't want me to move from that until the holidays was over.  And then that's when my union representative got involved, and we filed it.

Pl. Dep. 27, 30.

Although she states in her pre-hearing report to the EEOC, submitted after her charge of discrimination was filed, that "[n]o white part-time carrier or clerk has had to work ten years and then have to grieve to get full-time status," Pl. Pre-hearing Report (Ex. B to Pl. Response), she fails to show that she raised race or any other trait protected by Title VII as an issue in her grievance. Plaintiff fails to present sufficient evidence to show that she engaged in protected activity when she filed her union grievance in the fall of 2010.[9]  As a result, her retaliation claim fails.[10]

---

[9]Even if Plaintiff's union grievance is protected activity, Plaintiff fails to establish a causal connection between that grievance and her adverse employment action.  Plaintiff appears to rely on the closeness in time between the success of her grievance, resulting in a full-time position on January 6, 2011, and being accused of under-reporting her income.  See Pl. Resp. pp. 2,6.  In certain circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).  However, the record reveals that the investigation into Plaintiff (and other USPS employees) under-reporting her income began in June of 2010, when a supervisor with the SCESC notified the USPS OIG of the problem.  The USPS OIG then initiated its own investigation and conducted an interview with Plaintiff on January 27, 2011.  The undisputed record evidence shows that neither of Plaintiff's supervisors were aware of the investigation until OIG agents interviewed Plaintiff, and Plaintiff admitted to under-reporting her income.  Further, no action was taken by her supervisors until the OIG released its report, finding that Plaintiff, and others, had under-reported their income to the SCESC.  Thus, any inference of a causal connection between Plaintiff's union grievance and the adverse action created as a result of temporal proximity, is negated by the fact that the investigation into Plaintiff's actions (1) was initiated by someone other than, and without the knowledge of, Plaintiff's supervisors, (2) began before Plaintiff made her union grievance, and (3) was not limited to Plaintiff, but included other USPS employees besides Plaintiff who had not made a union grievance.

[10]To the extent Plaintiff alleges that her supervisors retaliated against her for her initial contact with an EEO counselor on February 21, 2011, by issuing the Notice of Removal on April 22, 2011, this argument fails as well.  Between the time Plaintiff first contacted the EEOC and the Notice of Removal was issued, she was indicted on criminal charges, thus breaking any causal connection between the two events.  See, e.g., Cheshewalla v. Rand & Son Const. Co., 415 F.3d 847, 852 (8th Cir.2005) (holding that "intervening events eroded any causal connection suggested by the temporal proximity of [the employee's] protected conduct and her layoff").

## V.     CONCLUSION

In sum, Plaintiff fails to present sufficient evidence to create a genuine dispute of fact with respect to either her race discrimination claim or her retaliation claim.   Therefore, summary judgment is appropriate.   It is recommended that Defendant's Motion for Summary Judgment (Document # 25) be granted and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III_____
Thomas E. Rogers, III
United States Magistrate Judge

April 28, 2015
Florence, South Carolina