# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Diana Brown, | ) |
| | ) |
| Plaintiff, | ) No. 4:14-cv-00307-RMG |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| Megan J. Brennan, *Postmaster General* | ) |
| *United States Postal Service*, | ) |
| | ) |
| Defendant. | ) |

This matter comes before the Court on the Report and Recommendation (R & R) of the Magistrate Judge, (Dkt. No. 43), recommending that Defendant's Motion for Summary Judgment, (Dkt. No. 25), be granted. For the reasons stated below, the Court ADOPTS the R & R and GRANTS Defendant's motion.

## I. BACKGROUND[1]

Plaintiff, an African-American female, worked as a Rural Carrier Associate for the United States Postal Service (USPS) from 2000 until 2010. This position was a part-time, non-career position. In the Fall of 2010, Plaintiff filed a grievance through the union, alleging that she had been improperly passed over for a full-time Rural Carrier position, raising the issue of whether the position was timely posted. Plaintiff's grievance was resolved on January 6, 2011, and Plaintiff was offered a full-time position at the Main Post Office in Florence with retroactive pay to November 20, 2010.

---

[1] The Magistrate Judge laid out the facts and evidence supporting them in the R & R. (Dkt. No. 43 at 1-7). Neither party objects to the facts, and the Court adopts them. Thus, the Court sees no need to repeat the details here and only gives a brief overview.

Back in 2008, Plaintiff's supervisor told her that her hours would be substantially reduced and suggested that she apply for partial unemployment benefits at the South Carolina Employment Security Commission (SCESC). Plaintiff applied for, and received, partial unemployment benefits from October of 2008 to October of 2009. In June of 2010, the USPS Office of Inspector General (OIG) received information from SCESC that Plaintiff and other postal workers had filed fraudulent unemployment claims that under-reported their income from USPS. OIG conducted its own investigation between July and November of 2010. That investigation revealed that Plaintiff had under-reported her income.

On January 27, 2011, several weeks after Plaintiff's promotion to a full-time position, Special Agents from the OIG of the Department of Labor interviewed Plaintiff. Plaintiff's supervisors were unaware of the OIG investigation until this interview. In this interview, Plaintiff admitted that she reported to SCESC working only half of the time that she actually worked. The OIG released a report of its finding on February 10, 2011. On February 12, 2011, Plaintiff was placed on off-duty status. Later that day, Plaintiff contacted an EEOC counselor.

On March 22, 2011, Plaintiff was indicted on one count of violating 18 U.S.C. § 641. Plaintiff received a Notice of Removal on April 22, 2011, and she grieved the removal through the union. The grievance was denied at steps one, two, and three. At the final appeal, Plaintiff's grievance was withdrawn by the union. Her employment was then officially terminated, and she was removed from the rolls of the USPS on January 31, 2013. After her indictment, Plaintiff entered a pretrial diversion program, completed its requirements in July of 2013, and had the indictment against her dismissed without prejudice in September of 2013.

Plaintiff filed a formal Charge of Discrimination with the EEOC, and the EEOC Administrative Judge made a finding of no discrimination. This action followed, bringing race discrimination and retaliation claims. The Magistrate Judge recommended granting Defendant's motion for summary judgment, (Dkt. No. 43), and Plaintiff filed timely objections, (Dkt. No. 45).

## II. LEGAL STANDARD

### A. Report & Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court is charged with making a de novo determination of those portions of the R & R or specified proposed findings or recommendations to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); *accord* Fed. R. Civ. P. 72(b).

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only material facts–those "that might affect the outcome of the suit under the governing law"–will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

At the summary judgment stage, the court must "construe the evidence, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the nonmoving party." *Dash v. Mayweather*, 731 F.3d 303, 310 (4th Cir. 2013). However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Id.* at 311.

### III. DISCUSSION

**A. Race Discrimination**

Plaintiff proceeds under a *McDonnell Douglas* analysis. To establish a prima facie case of racial discrimination, Plaintiff must show that (1) she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances.[2] *Harris v. Home Sales Co.*, 499 F. App'x 285, 291-92 (4th

---

[2] The Fourth Circuit has not been consistent in its statement of the fourth factor of a prima facie case for racial discrimination claims where an adverse employment action was taken. *Compare Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (stating that the fourth element is showing that "the position remained open or was filled by similarly qualified applicants outside the protected class") *with Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (stating that the fourth element is showing that "other employees who are not members of the protected class were retained under apparently similar circumstances") and *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 234 (4th Cir.1999) (en banc) (providing a three-prong prima facie test involving comparators), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *but see Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) ("[P]laintiff is not required as a matter of law to point to a similarly situated comparator in order to succeed on a discrimination claim.") (internal quotations omitted). Both the *Bryant* and *Holland* fourth factors require Plaintiff to show that her termination occurred under circumstances giving rise to an inference of discrimination, while *Laing* recognizes that other forms of evidence may be used to support a Plaintiff's claim of pretext.
  The Magistrate Judge used the fourth element as described in *Bryant*, noting that the fourth element can also be met by showing other circumstances giving rise to a reasonable

-4-

Cir. 2012); *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). The Magistrate Judge found that Plaintiff failed to identify a proper comparator and meet the fourth prong.

Plaintiffs must show that "they are similar in all relevant respects to their comparator." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (*quoting Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)); *accord Ward v. City of North Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006).

Such comparisons "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). However, a plaintiff can only draw a comparison where "discipline [is] imposed for like offenses." *Id.*; *see also Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."). "In determining whether a plaintiff's misconduct is comparable in seriousness to that of employees outside the protected class, a court should consider 'the gravity of the offenses on a relative scale.'" *Charlot v. Donley*, No. 3:11–00579, 2013 WL 1339594 at *4 (D.S.C. Mar. 29, 2013) (quoting *Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985)).

---

inference of unlawful discrimination. (Dkt. No. 43 at 8); *see also Miles v. Dell, Inc.*, 429 F.3d 480 at 487-88 (4th Cir. 2005) (noting "exceptions" to the fourth prong). Neither party has objected to this statement of the fourth element, and both parties have argued under it. Therefore, the Court will apply the fourth element as described in *Bryant*.

The Plaintiff points to two USPS employees as comparators: Angela Atkison and Rebecca Jenson. Ms. Atkinson, a white employee, was also investigated for under-reporting her income to SCESC. She received a Notice of Removal and lost at step one and step two of the grievance process, but she reached a settlement at step 3 of the grievance process and retained her job. It is undisputed that Ms. Atkinson, who worked in the Hartsville Post Office, had different supervisors than Plaintiff. It is also undisputed that, unlike Plaintiff, the U.S. Attorney's Office did not bring criminal charges against Atkinson.[3] The Court agrees with the Magistrate Judge that under these circumstances, Ms. Atkinson is not a proper comparator.

Ms. Jenson and Plaintiff did have the same supervisors. However, their conduct was not similar. Jenson was not investigated for under-reporting her income to SCESC. Jenson received reimbursement for the use of her personal vehicle. When she was later issued a government vehicle, there was a miscommunication between local management and the District Office, and Jenson continued to receive this reimbursement. When the mistake was realized, Jenson was issued an indebtedness notice and required to pay back the money. The exact same action was taken with regard to two African-American employees who had continued to improperly receive this reimbursement. Plaintiff's supervisor testified that he did not take any corrective action against these employees because they did not "intentionally defraud" the organization or "make any purposeful misrepresentations." The Court agrees with the Magistrate Judge that being criminally indicted for stealing based on affirmative misrepresentations is not a "like offense" to

---

[3] The other three USPS employees, including a white employee, who were indicted were all, like Plaintiff, terminated.

obtaining overpayments because of a paperwork mix-up by management. Therefore, Plaintiff has not presented proper comparator evidence.

Plaintiff has also not presented any other evidence that would raise an inference of discrimination. All USPS employees criminally indicted for under-reporting income to SCESC, white and black, were terminated. All USPS employees who obtained overpayments of vehicle reimbursements, both white and black, were required to pay back the money but not disciplined. She has simply not presented any other evidence raising an inference of discrimination. Therefore, summary judgment on her claim of racial discrimination is appropriate.

**B. Retaliation Claim**

In order to establish a prima facie claim of retaliation in violation of Title VII, a plaintiff must show that "1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action." *Munday v. Waste Mgmt. of North Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997). "The employer may then rebut the prima facie case . . . by showing that there was a legitimate non-discriminatory reason for the adverse action . . . after which the burden shifts back to the plaintiff to show that those reasons are pretextual." *Id.* (internal citations omitted).

The Court agrees with the Magistrate Judge that Plaintiff has put forward no evidence that her 2010 grievance was protected activity. While not clear, it appears Plaintiff grieved either the fact that the position was not posted or that she had seniority and was passed over. Regardless, there is no evidence in the record that her 2010 grievance opposed any employment practices made unlawful by Title VII. Plaintiff states that "[t]he 'investigation' only happened

after Plaintiff was successful in a grievance about not being made permanent after about 9 years of employment." (Dkt. No. 45 at 2). This statement is factually inaccurate, as it is undisputed that the investigation actually began before the grievance; Plaintiff was just unaware of it at the time. However, even if true, it is irrelevant as this grievance does not oppose employment practices made unlawful by Title VII.

The only protected activity at issue is Plaintiff's contact of an EEO counselor on February 21, 2011, after the OIG report was issued and after she was placed on off-duty status. Plaintiff received the Notice of Removal two months later on April 22, 2011. Normally, close temporal proximity between the protected act and the adverse employment action is sufficient to establish the third prong. *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 845 (2d. Cir. 2013) ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity."); *Adams v. City of Montgomery*, 569 F. App'x 769, 773 (11th Cir. 2014); *Clark v. Jackson Hosp. & Clinic, Inc.*, No. 2:12–CV–836, 2013 WL 5347450 at * 5 (M.D. Ala. Sept. 23, 2013). The Magistrate Judge found that the intervening criminal indictment broke any causal connection suggested by the temporal proximity of the protected conduct and Notice of Removal. (*See* Dkt. No. 43 at 15 n.10 (citing *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005))).

To the extent Plaintiff has made out a prima facie case with temporal proximity, Defendant has put forward a legitimate non-discriminatory reason for the adverse action (namely, that she affirmatively misrepresented her income to SCESC and was indicted for stealing), and Plaintiff has failed to create an issue of fact on pretext. More than a temporal connection is

required to present a genuine factual issue on pretext in a retaliation case where the employee was accused of misconduct ***before*** she engaged in the protected activity. *Hervey v. Cty of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008). Plaintiff has not presented any other evidence of discrimination.

To survive summary judgment, Plaintiff must present evidence from which a reasonable jury could conclude that Defendant terminated her because she contacted an EEO counselor. *See, e.g., Zann Kwan*, 737 F.3d at 846; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013); *Rattigan v. Holder*, 982 F. Supp. 2d 69, 80-81 (D.D.C. 2013). She has failed to do so and summary judgment is appropriate.

## IV. CONCLUSION

The Court ADOPTS the R & R (Dkt. No. 45) as an Order of the Court. Accordingly, Defendant's motion for summary judgment (Dkt. No. 25) is GRANTED and this case is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

May 2(, 2015
Charleston, South Carolina